IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 14, 2015

**BRUCE ANTON PARKS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Bradley County**
**No. 14-CR-081    Sandra Donaghy, Judge**

_____

**No. E2014-02359-CCA-R3-PC – Filed December 15, 2015**

_____

Petitioner, Bruce Anton Parks, appeals the denial of his petition for post-conviction relief, claiming he received ineffective assistance of counsel on several bases. After a thorough review of the record and the applicable law, we affirm the decision of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Wencke West, Cleveland, Tennessee, for the appellant, Bruce Anton Parks.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; Stephen Crump, District Attorney General; and Brooklynn M. Townsend, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This is Petitioner's appeal from the denial of his petition for post-conviction relief filed in the Criminal Court of Bradley County on January 16, 2014.

*Facts and Procedural History*

After a jury trial nearly four years ago, Petitioner was convicted of aggravated rape and aggravated burglary. He received consecutive sentences of twenty-five years and six years, respectively, for an effective sentence of thirty-one years. The convictions

and sentences were affirmed on appeal. *State v. Bruce Anton Parks, Jr.*, No. E2012-02621-CCA-R3-CD, 2013 WL 5314600 (Tenn. Crim. App. Sept. 20, 2013), *no perm. app. filed*. The following facts have been summarized from our decision in the direct appeal. *See id.* at *1-4.

At trial, the victim testified that on October 22, 2010, she was asleep in her bed in her locked apartment. She awoke to a noise. A masked man with dirty socks over his hands threatened her and pointed a gun at her. The man punched the victim and began to struggle with her on the bed as she screamed. The assailant beat her repeatedly and digitally penetrated her vagina twice. When the assailant stood up to lower his pants, the victim was able to escape the apartment.

Afterward, the victim told police that Petitioner was the assailant. She recognized his voice because she was acquainted with him and had had a conversation with him at a gas station two days before the assault. Petitioner was discovered at his girlfriend's apartment about 100 to 150 yards from the victim's residence. Petitioner gave his DNA to law enforcement officers via buccal swab. During the investigation, a sock and a plastic pistol were recovered from the victim's bedroom. DNA testing of the sock and pistol was inconclusive, but the Tennessee Bureau of Investigation ("TBI") could not exclude Petitioner as a contributor to the DNA found on those items.

As a defense witness at trial, Petitioner's mother testified that she knew the victim and that Petitioner had a tattoo on his left hand. The victim testified that she did not recall seeing any tattoos on the hands of her attacker.

On January 16, 2014, Petitioner filed a pro se petition for post-conviction relief. Appointed counsel filed an amended petition on April 25, 2014, alleging ineffective assistance of counsel. At an evidentiary hearing held on October 8, 2014, the following evidence was presented.

Petitioner testified that he had "disagreements all the time" with trial counsel. Trial counsel only met with him three or four times at the jail. They did not discuss possible defenses. Petitioner told trial counsel about his girlfriend as an alibi witness, but trial counsel did not confirm that he investigated her as a potential witness. Petitioner wanted trial counsel to file a motion to suppress the DNA test results because he thought they were misleading to the jury. He also wanted trial counsel to file motions to suppress the victim's identification of him and her statements to the police. Petitioner told trial counsel that he "don't totally understand . . . everything" and asked to be evaluated, but trial counsel told Petitioner that he "was good enough to stand trial."

Trial counsel testified that he had been in the public defender's office since 1989 and estimated that he had participated in 100 trials. His relationship with Petitioner

during the case was good, although they did have disagreements "on more than one occasion."

Trial counsel requested and received discovery from the State, but he did not personally examine the physical evidence recovered from the crime scene—the dirty sock and plastic gun. When the DNA testing was inconclusive, Petitioner wanted trial counsel to file a motion to suppress the results. After discussing the results with the TBI analyst and doing independent research, trial counsel decided against filing the motion. He believed that the trial court would not have granted the motion and that he could adequately undermine the DNA results through cross-examination of the TBI analyst. He did not request additional DNA testing of the evidence, and he did not object to the admission of the DNA results at trial. In retrospect, trial counsel admitted that he should have filed the motion to suppress for Petitioner's "peace of mind."

All of the meetings between trial counsel and Petitioner occurred in the jail. Trial counsel estimated that he met with Petitioner at least five times. Trial counsel used an investigator to help prepare for the case, and the investigator also met with Petitioner twice. Trial counsel could not specifically recall discussing Petitioner's mental health, but he was "sure" that they had discussions on that subject. Trial counsel was aware that Petitioner received treatment as a juvenile for Attention-Deficit/Hyperactivity Disorder ("ADHD") and that he was "somewhat low functioning [in] the borderline range." However, trial counsel was unaware of any mental diseases or defects that affected Petitioner. From their interactions, trial counsel felt that Petitioner "was competent through the whole process to consult with counsel." In fact, Petitioner was quite concerned with and involved in the preparation of his case. Because trial counsel did not have any doubts about Petitioner's competency, he did not request a mental health evaluation.

Petitioner's mother indicated that Petitioner was evaluated by a psychologist, but trial counsel did not request access to Petitioner's mental health records before the trial. A copy of a psychological evaluation report conducted by Dr. Benjamin Biller on May 11, 2010, for the purpose of determining eligibility for disability benefits was part of the pre-sentencing investigation report. The report concluded that Petitioner had "likely mental retardation and anti-social personality disorder." Trial counsel explained that their theory of the case was misidentification not lack of mental capacity, and because Petitioner did not appear to be incompetent to stand trial, psychological evidence would not be helpful for his defense. Trial counsel could not recall Petitioner's being interested in a mental capacity defense.

Given the extent of the evidence, trial counsel's trial strategy was to emphasize reasonable doubt as to Petitioner's being the assailant. Trial counsel spoke to Petitioner's girlfriend over the phone on two occasions as a potential alibi witness. The girlfriend

attended the trial and was arrested for an outstanding probation violation. Trial counsel spoke with her about the case and she was cooperative. At the time of the trial, the girlfriend had accused Petitioner of burglary by entering her home through a window without consent. Petitioner was discovered at the girlfriend's apartment which was very close to the victim's apartment. Trial counsel decided that the jury would not have favorably received alibi testimony from the girlfriend and that her testimony could open the door for evidence of previous misconduct. Petitioner did not have an exclusive or steady relationship with the girlfriend. He stayed with her occasionally, but he also "had other children with other women." Trial counsel also thought that the girlfriend's obviously poor composure after being served with an arrest warrant would have made her a poor witness.

During the State's examination of a police officer during the trial, the prosecutor asked, "[U]p to today as you sit on that witness stand, has anyone come to you to give Mr. Parks an alibi to this crime?" The witness answered negatively. Trial counsel did not object to the question. Trial counsel opined that he could have objected but did not think that the question would have warranted a mistrial. He also thought that asking for a curative instruction would have only emphasized the answer to the question—that no alibi had been provided. Trial counsel felt that the trial was going as best as it could up to that point. Trial counsel admitted that he could not recall making any objections at trial.

Trial counsel admitted that he was cautious and gentle while cross-examining the victim. He explained that she was a sympathetic witness for the jury and that he "didn't want to alienate the jury" with the manner and nature of his questions. He opined that some attorneys are too aggressive with victims which may adversely affect their standing with the jury. He also explained that a hostile approach to cross-examination could make the victim uncomfortable and less forthcoming. Trial counsel admitted that he did not cross-examine the victim about her initial statement to police as reflected in the offense report, which stated that she reported only that a "black male" was the assailant but did not name Petitioner; however, he insisted that he effectively covered that point during the cross-examination of the officer who composed the offense report. He also admitted that he did not cross-examine the victim about her medical records which reflected that she did not identify Petitioner in her statements to medical personnel. Trial counsel explained that he could have done so but emphasized that the evidence showed that the victim never made inconsistent statements, she identified Petitioner soon after the assault, and she stood resolutely by her identification of Petitioner. Trial counsel felt that her omitting any specific accusation of Petitioner immediately after the crime could have been easily explained given the circumstances of the traumatic event that the victim had just suffered.

Petitioner's mother testified that trial counsel spoke with her on several occasions before the trial. She visited his office once or twice. She told trial counsel that Petitioner

-4-

had been dropped on his head as a baby, which she thought "slowed him down a little bit." Petitioner received social security disability benefits for ADHD since he was four years old. She gave trial counsel a copy of the evaluation performed on Petitioner as part of the disability application. Trial counsel did not speak to her in preparation for her testimony at trial.

After the evidentiary hearing, the post-conviction court denied post-conviction relief, and Petitioner timely filed a notice of appeal.

*Analysis*

On appeal, Petitioner argues that the post-conviction court erred in denying post-conviction relief. Specifically, he contends that he received ineffective assistance of counsel because trial counsel failed (1) to adequately discuss the case with Petitioner before trial, (2) to request a mental evaluation, (3) to investigate an alibi witness, (4) to adequately prepare a witness before testifying, (5) to file a motion to suppress the DNA evidence, (6) to make objections during trial, (7) to rigorously cross-examine the victim at trial, and (8) to investigate the physical evidence.[1] The State argues that the post-conviction court's decision should be affirmed because Petitioner failed to prove that he received ineffective assistance of counsel by clear and convincing evidence. We agree with the State.

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient

---

[1] Petitioner raised several other arguments in the proceeding below, but because he has not pursued those on appeal, they are deemed abandoned. *See Ronnie Jackson, Jr. v. State*, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at *6 n.2 (Tenn. Crim. App. 2009), *perm. app. denied* (Tenn. Apr. 16, 2010).

and that the deficiency prejudiced the defense. *See Burnett v. State*, 92 S.W.3d 403, 408 (Tenn. 2002). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley*, 960 S.W.2d at 580. "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). A defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). This Court will not use hindsight to second-guess a reasonable trial strategy, *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994), even if a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting *Goad*, 938 S.W.2d at 369). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. Prejudice is shown where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Id.*

Whether a petitioner has been denied the effective assistance of counsel presents a mixed question of law and fact. *Burns*, 6 S.W.3d at 461. This Court will review the post-conviction court's findings of fact "under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is

otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). This Court will not re-weigh or re-evaluate the evidence presented or substitute our own inferences for those drawn by the trial court. *Henley*, 960 S.W.2d at 579. Questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *Momon*, 18 S.W.3d at 156 (citing *Henley*, 960 S.W.2d at 578). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields*, 40 S.W.3d at 458.

The post-conviction court specifically accredited the testimony of trial counsel and found that Petitioner's testimony lacked credibility. Additionally, the post-conviction court found that Petitioner's mother's testimony had only limited credibility, giving it little weight. We will not question these determinations on appeal.

Petitioner claims that trial counsel was ineffective for failing to adequately discuss the case with him. The post-conviction court found that trial counsel met with Petitioner several times and discussed with Petitioner trial strategy, the theory of the case, and the potential use of Petitioner's girlfriend as an alibi witness. Trial counsel's investigator also met with Petitioner twice to discuss the case. Because the evidence does not preponderate otherwise, we conclude that Petitioner has failed to prove that trial counsel acted deficiently in reviewing the case with Petitioner. This issue is without merit.

Petitioner contends that trial counsel should have requested a mental health evaluation. Defense counsel has a duty to investigate "all apparently substantial defenses available." *Baxter*, 523 S.W.2d at 935 (quoting *Beasley v. United States*, 491 F.2d 687, 696 (6th Cir. 1974)); *see Burns*, 6 S.W.3d at 462. However, "[w]hen assessing the performance of trial counsel, courts must . . . evaluate the challenged conduct from counsel's perspective at the time, rather than from the perspective of a mental health expert offering testimony at a post-conviction proceeding." *Henley*, 960 S.W.2d at 583.

Trial counsel was aware that Petitioner was somewhat "slow" and had a diagnosis that entitled him to disability benefits. However, trial counsel was not aware that Petitioner had any serious mental diseases or defects that would have rendered him incompetent to stand trial. Petitioner's interactions with trial counsel led trial counsel to believe that Petitioner was perfectly capable of helping prepare his own defense, which he did in fact do. While Petitioner testified that he discussed this subject with trial counsel and asked for a mental health evaluation, the post-conviction court rejected this testimony as lacking credibility. The same goes for the testimony of Petitioner's mother that she informed trial counsel that Petitioner had been dropped on his head and had a diagnosis of ADHD. Trial counsel was entitled to rely on his own experience with Petitioner and choosing not to have an evaluation was within his discretion based on the

information that he possessed. *See, e.g.*, *Demario Johnson v. State*, No. W2011-02123-CCA-R3-PC, 2013 WL 772795, at *8 (Tenn. Crim. App. Feb. 27, 2013) (finding no deficiency where trial counsel did not seek a mental health evaluation based upon the information supplied by the defendant during the intake interview and her own interactions with the defendant), *perm. app. denied* (Tenn. July 10, 2013); *Wadie Michael Holifield v. State*, No. W2008-02040-CCA-R3-PC, 2009 WL 2581282, at *8 (Tenn. Crim. App. Aug. 21, 2009) (finding trial counsel did not act deficiently by not investigating mental health issues where she "was only aware that the petitioner was depressed and had made a half-hearted attempt to commit suicide" and the defendant "did not inform trial counsel of any problems from which he was suffering"), *perm. app. denied* (Tenn. Feb. 22, 2010). Furthermore, we note that Petitioner did not present evidence at the post-conviction hearing of what a mental health evaluation would have revealed and how it would have affected the outcome of his case. *See, e.g.*, *Demario Johnson*, 2013 WL 772795, at *8 (finding no prejudice where the "petitioner failed to present the testimony of an expert at the evidentiary hearing to explain what, if any, mental health evidence trial counsel should have advanced at trial" (citing *James E. Jackson v. State*, No. M2001-02005-CCA-R3-PC, 2002 WL 31757477, at *8 (Tenn. Crim. App. Dec.6, 2002), *perm. app. denied* (Tenn. May 12, 2003)); *John Johnson v. State*, No. W2007-02847-CCA-R3-PC, 2009 WL 2970520, at *10 (Tenn. Crim. App. Sept. 14, 2009) (concluding that the petitioner "failed to prove a reasonable probability that the results of the proceeding would have been different had counsel conducted additional investigation into his mental health for trial"), *perm. app. denied* (Tenn. Jan. 25, 2010). We conclude that trial counsel did not act deficiently on this subject, nor was Petitioner prejudiced. Petitioner is not entitled to relief on this claim.

Petitioner claims that trial counsel was ineffective for failing to call his girlfriend as an alibi witness. Trial counsel spoke with Petitioner's girlfriend twice over the phone before the trial and spoke with her at the trial. Trial counsel was concerned that the testimony from the girlfriend could have had an adverse impact on Petitioner's case because she had sworn out a private prosecution warrant against Petitioner for burglary and would have provided an alibi placing Petitioner at a location very near to the location of the crime scene. Furthermore, because Petitioner's girlfriend was distraught at the trial after being served with an arrest warrant, trial counsel was not confident in her ability to be a composed and credible witness on the stand. We find trial counsel's decision not to call the girlfriend as an alibi witness to be a sound tactical decision. *See Vaughn v. State*, 202 S.W.3d 106, 123 (Tenn. 2006). Petitioner is not entitled to relief on this basis.

Petitioner claims that trial counsel was ineffective for failing to adequately prepare Petitioner's mother for her trial testimony. Trial counsel called Petitioner's mother to testify for the limited purpose of establishing that Petitioner bore a tattoo on the hand that the victim testified did not have a tattoo. She was not called as a character witness. Her testimony was brief and straightforward. Petitioner has not proven that trial counsel

acted deficiently by not providing additional preparation for her testimony or that her testimony prejudiced Petitioner because she was ill-prepared. This issue is without merit.

Petitioner argues that trial counsel should have filed a motion to suppress the DNA test results. However, Petitioner has failed to show that the motion would have succeeded had trial counsel filed such a motion. Trial counsel spent considerable effort discussing the test results with the TBI analyst and evaluating both the value of the evidence and the possible need for independent testing. Trial counsel did not believe that the motion would have been granted because the results were relevant and somewhat probative. Trial counsel chose instead to focus on arguing the weight of the evidence to the jury. At the hearing, trial counsel also noted the possibility that the suppression hearing could have resulted in a benefit to the State by giving it an opportunity to become better informed about the nature of the TBI analyst's testimony before trial. Given the facts of this case, we do not think that trial counsel's decision not to file a motion to suppress this evidence was deficient.

Petitioner argues that trial counsel should have objected to improper questioning by the prosecutor and asked for a mistrial. A trial court has the authority to declare a mistrial, and its decision is reviewed for an abuse of discretion. *See State v. Nash*, 294 S.W.3d 541, 546 (Tenn. 2009). "Normally, a mistrial should be declared only if there is a manifest necessity for such action." *State v. Saylor*, 117 S.W.3d 239 (Tenn. 2003). A mistrial is appropriate when "a trial cannot continue, or a miscarriage of justice would result if it did." *Id.* (internal quotation omitted). Although "no abstract formula should be mechanically applied" to determine when a mistrial is justified, our courts have commonly looked to three nonexclusive factors for guidance in situations involving improper witness testimony: "(1) whether the State elicited the testimony, or whether it was unsolicited; (2) whether the trial court offered and gave a curative jury instruction; and (3) the relative strength or weakness of the State's proof." *Nash*, 294 S.W.3d at 546-47 (citing *State v. Smith*, 893 S.W.2d 908 (Tenn. 1994)) (internal quotation omitted).

Trial counsel admitted that he did not object when the prosecutor asked the investigating officer, "[U]p to today as you sit on that witness stand, has anyone come to you to give Mr. Parks an alibi to this crime?" Assuming that this was an improper question which shifted the burden of proof to the defense, we do not think that trial counsel's failure to object or request a mistrial was ineffective assistance. Trial counsel was well pleased with progression of the trial up to that point, and he believed that the question warranted, at most, a curative instruction, which trial counsel believed only would have emphasized the error. From the record, it does not appear that a mistrial was warranted under the circumstances. Thus, trial counsel's decision not to request a mistrial was a tactical decision which we do not find deficient.

Petitioner claims that trial counsel provided inadequate cross-examination of the victim. However, trial counsel thoroughly explained that the tenor and substance of his cross-examination was intentionally calculated to build rapport with the victim and to avoid alienating the jury. We conclude that these decisions were wholly within the realm of reasonable trial tactics and that trial counsel was not deficient in this regard. Petitioner has not identified any significant shortcomings in trial counsel's cross-examination of the victim such that Petitioner's case was prejudiced by the omission of additional questioning. Petitioner is not entitled to relief on this basis.

Petitioner claims that trial counsel was ineffective for failing to examine the physical evidence in this case before trial and for failing to object to the introduction of the dirty sock, despite minor differing descriptions of the color and characteristics of the sock. There appears to have been no pressing need for trial counsel to examine the evidence before trial; thus his performance was not deficient for choosing not to do so. Different reports referred to the sock as white or as grey or as a Nike sock. The post-conviction court found that the dirty sock was apparently both white and grey. Despite these differing descriptions of the sock, there is no evidence that there was any basis for exclusion of the sock. Trial counsel forced the State to prove the chain of custody of this evidence without stipulation. At most, trial counsel could have explored the issue with further cross-examination, but as the post-conviction court observed, it does not seem that his performance in this regard fell below prevailing professional norms. Moreover, the record certainly does not demonstrate that Petitioner suffered noteworthy prejudice in this regard. Petitioner is not entitled to relief on this basis.

*Conclusion*

Because Petitioner has failed to prove that he received ineffective assistance of counsel, the decision of the post-conviction court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE